## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                                    Crim. No. 21-99 (DSD/BRT)

                Plaintiff,

v.

                                    **REPORT AND**
Brandon Marcel Thomas,                          **RECOMMENDATION**

                Defendant.

David P. Steinkamp, Esq., United States Attorney's Office, counsel for Plaintiff.

James R. Behrenbrinker, Esq., Behrenbrinker Law Firm, counsel for Defendant Nelson.

BECKY R. THORSON, United States Magistrate Judge.

On April 20, 2021, Defendant Brandon Marcel Thomas was indicted on one count of felon in possession of firearms in violation of 18 U.S.C. §§ 2, 922(g)(1), 924(a)(2). (Doc. No. 13.) This case is before the Court on Defendant's Motion to Suppress Fruits of Unlawful Search and Seizure. (Doc. No. 28.) The matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. The Court held a motion hearing on June 7, 2021, and one exhibit—the search warrant at issue—was received into evidence. (*See* Doc. Nos. 32, 33.) For the reasons stated below, this Court recommends that Defendant's motion be denied.

## BACKGROUND

On March 17, 2021, as part of a narcotics and illegal possession of firearms investigation, Minneapolis police officer Marcus Ottney obtained a warrant to search "the

following described premises: Storage locker #1078 located at Extra Space Storage, at the address of [XXXX] West River Road" in Minneapolis, Minnesota for the following property and things:

1. Controlled substances to include, but not limited to Oxycodone
2. Drug paraphernalia
3. Documents, notes, papers, ledgers, to show activities of controlled substances distribution and to indicate names, addresses and phone numbers of possible sources and/or customers of controlled substances
4. Monies to show profit of the sale of controlled substances
5. Documents, receipts, letters, bulls, and identification to show constructive possession of the items seized
6. Firearms, ammunition, and firearm cleaning supplies
7. Cell phones and computers including hard drives, peripherals, and removable storage media that may contain information regarding the sale of controlled substances; to be searched further, under a separate search warrant at a later date
8. Any street gang related items, including but not limited to clothing, drawings, pictures, and notes
9. Keys to show constructive possession of the items seized
10. Items that DNA can be collected from to show constructive possession of the items seized
11. Items to establish ownership and occupancy[.]

(*See* Doc. No. 33, Hr'g Ex. 1.)

Officer Ottney explained in his affidavit in support of the warrant that officers had learned from a confidential reliable informant ("CRI") that Thomas had been seen possessing firearms within the last 72 hours. Officer Ottney stated the following:

> The CRI knew the male's name to be BRANDON THOMAS. The CRI also knew BRANDON THOMAS to go by the street-name of "B-MAN." The CRI observed a video in a public forum setting that showed BRANDON THOMAS in possession of numerous firearms. The CRI stated BRANDON THOMAS had multiple shoe boxes that had at least two handguns in each box.

> The CRI stated that BRANDON THOMAS appeared to be in a storage locker due to the roll-up garage-style door and the cement floors. It was

> unknown where the believed storage locker's location was. The CRI knew
> BRANDON THOMAS to be a YNT gage member. Furthermore, the CRI
> knew BRANDON THOMAS to be gathering that cache of firearms to
> distribute to YNT street-gang members for the summer, when street-gang
> violent activity typically increases.
>
> The CRI also knows BRANDON THOMAS to sell Oxycodone pills. The
> CRI has observed BRANDON THOMAS conduct narcotics transactions
> within the past two weeks.

(Hr'g Ex. 1.) The CRI confirmed after viewing a photograph of Thomas that he was the

person the CRI saw in possession of multiple firearms. (*Id.*)

Officer Ottney averred that he was familiar with Thomas from previous law

enforcement contacts and knew him to go by the street-name of "B-MAN." (*Id.*) He also

stated that Thomas is a "documented YNT street-gang member"—a gang directly

connected to numerous murders, shootings, aggravated robberies, and drug trafficking in

Minneapolis—and that Thomas was a convicted felon, which made him ineligible to

possess firearms or ammunition. (*Id.*) Officer Ottney testified in his affidavit that he

conducted surveillance on Thomas, and he found him to frequent an area near a storage

locker facility on West River Road in Minneapolis. (*Id.*) On March 17, 2021, Officer

Ottney spoke with the front desk worker at that storage locker facility and learned that

Thomas was renting storage locker #1078 and that he had been renting that unit since

October 2000. (*Id.*) Officer Ottney observed the storage units and testified in the affidavit

that "they matched the general description provided by the CRI" because "[t]he facility

had cement floors and roll-up garage-style doors on the storage lockers." (*Id.*) Officer

Ottney also stated that he knows—based on his training and experience—that "street-

gang members like to use storage lockers as a place to stash their weapons, narcotics,

and/or money proceeds from narcotics sales . . . because it is harder for law enforcement to track and they can quickly switch storage lockers, making it harder for law enforcement to locate their stash location." (*Id.*)

The search warrant issued and was executed on March 17, 2021. (*Id.*) On April 20, 2021, Defendant Thomas was indicted on one count of felon in possession of firearms. (Doc. No. 13.)

## DISCUSSION

Defendant Thomas argues that the search warrant application for the storage locker failed to describe a nexus between the alleged criminal activity (i.e., illegal possession of firearms) and the storage locker, and therefore it lacked probable cause as required by the Fourth Amendment.

The Fourth Amendment requires probable cause to be shown before a search warrant is authorized. U.S. Const. amend. IV; *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007). In determining whether probable cause exists, a detached and neutral judge must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998) ("The standard of probable cause for the issuing judge is whether, given the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (quotations omitted)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not

4

readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232.

Courts should not review search warrants in a hyper-technical fashion. *United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006).

"When . . . the issuing court relies solely on an affidavit to determine whether probable cause exi[sts], only the information found within the four corners of the affidavit may be considered." *United States v. Wells*, 347 F.3d 280, 286 (8th Cir. 2003) (quotations omitted). In reviewing the decision of the issuing court, this Court must ensure that the court "'had a substantial basis for . . . conclud[ing] that probable cause exists.'" *United States v. Oropesa*, 316 F.3d 762, 766 (8th Cir. 2003) (quoting *Gates*, 462 U.S. at 238–39). Because reasonable minds may differ on whether a particular search-warrant affidavit establishes probable cause, the issuing court's determination is accorded great deference. *United States v. Wajda*, 810 F.2d 754, 760 (8th Cir. 1987) (citing *United States v. Leon*, 468 U.S. 897, 914 (1984)).

This Court concludes that the supporting affidavit for the search of the storage locker does provide a proper nexus and sufficient probable cause for the search and seizure. As explained above, the application for the search warrant included information about Defendant Thomas—both information provided by a CRI and information learned through officer surveillance and other investigation—indicating a fair probability that Thomas was illegally in possession of firearms. The affidavit links the criminal activity— possession of firearms—with Defendant Thomas based on the CRI's observation of

Thomas with firearms,[1] and the affidavit links the possession of firearms with the storage locker based on the CRI's observation of Thomas with firearms in a place that looked to be a storage locker with cement floors and a roll door,[2] the officer's investigation through questioning of an employee at a storage locker facility near where Thomas frequented, learning that Thomas rented a storage locker at the facility, and then observation that the

---

[1]    Defendant states that because the affidavit does not state the date the video was recorded that "this evidence may be stale." (Doc. No. 28, Def.'s Mot. to Suppress 4.) However, when read in context, the inference is that the video was made within approximately 72 hours of when the CRI reported seeing Thomas in possession of numerous firearms. *United States v. Jones*, No. 10-336 (JNE/AJB), 2011 WL 1837861, at *4 (D. Minn. Mar. 31, 2011) ("Reasonable inferences may be drawn from the totality of circumstances in determining whether probable cause to issue a warrant exists.") (citing *United States v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008)); *see also id.* (finding not stale and stating "[t]his is particularly the case where firearms are the subject of the warrant because people who possess firearms tend to keep them for a long time") (citing *United States v. Neal*, 528 F.3d 1069, 1074 (8th Cir. 2008)); *United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998) (stating that "there is no bright-line test for determining when information is stale" and rejecting an argument in a narcotics case involving information more than two-weeks old).

[2]    Defendant takes issue with giving any significance to the CRI's observation that it appeared that Defendant was in a storage locker with cement floors and roll-up garage doors because he asserts these features are "common in the industry." (Doc. No. 28, Def.'s Mot. to Suppress 4.) However, this misses the point. The significance is that Officer Ottney observed Defendant frequenting the area near this particular storage facility, and then learned through investigation that Defendant in fact rented a storage unit there. The likeness in appearance of the storage lockers observed by Officer Ottney and the reported appearance by the CRI provided some corroboration that what the CRI was telling Officer Ottney was true. Further, the fact that neither Officer Ottney nor the CRI saw Defendant at this specific storage facility does not negate the probable cause. Based on the totality of the circumstances, there was a fair probability that contraband or evidence of a crime would be found in that particular place. *See Walden*, 156 F.3d at 870; *see also United States v. McCabe*, No. 20-106 (DWF/BRT), 2021 WL 1321372, at *9 (D. Minn. Jan. 29, 2021) ("The fact that officers did not observe any of these three men actually enter the specific unit is of no moment, as it was a reasonable inference that the unit was where they were coming and going from since McCabe rented that unit in that building.").

storage lockers at that facility match the description provided by the CRI. In short, the
dots were connected between the Defendant's possession of firearms and the storage
locker to be searched. The affidavit also included averments by Officer Ottney that he
knows through training and experience that "street-gang members like to use storage
lockers as a place to stash their weapons, narcotics, and/or money proceeds from
narcotics sales . . . because it is harder for law enforcement to track and they can quickly
switch storage lockers, making it harder for law enforcement to locate their stash
location." (Hr'g Ex. 1.)

Simply because the affidavit did not provide more specific facts explaining the
basis for the CRI's knowledge regarding Defendant Thomas's possession, does not mean
that the warrant was not supported by the necessary probable cause. *See Technical
Ordinance, Inc. v. United States*, 244 F.3d 641, 649 (8th Cir. 2001) ("A law enforcement
official is not required to include everything he knows about a subject in his affidavit,
whether it is material to a finding of probable cause or not."). "[A]n Affidavit supported
by information supplied by a CRI supplies probable cause as long as that information is
reasonably determined to be reliable, which requires corroboration by independent
evidence." *United States v. Rekonen*, No. 07-123 (JNE/RLE), 2007 WL 2973840, at *12
(D. Minn. Oct. 9, 2007). However, "[s]uch reliability can be established through
independent corroboration or the informant's track record of providing trustworthy
information." *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993). The Eighth
Circuit has explained as follows:

> When a confidential informant provides information in support of a search warrant, the issuing magistrate considers the informant's reliability and the basis of his knowledge. *Gates*, 462 U.S. at 233, 103 S.Ct. 2317. The totality of the circumstances analysis, however, does not mandate that both factors be present before a warrant may issue. Instead, a strong showing of one may compensate for a deficiency in the other. *Id.* For example, if an "informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause . . . ." *Id.; see also United States v. Anderson*, 933 F.2d 612, 615 (8th Cir. 1991). The information from a CRI is sufficiently reliable if it is corroborated by other evidence, or if the informant has a history of providing reliable information. *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993).

*United States v. Lucca*, 377 F.3d 927, 933 (8th Cir. 2004). Here, some of the information provided by the CRI was corroborated – i.e., that Thomas went by the street-name "B-MAN," that Thomas was a YNT gang member, that Thomas rented a storage locker, that the storage lockers at the facility where Thomas rented from had cement floors and roll-up garage-style doors. "Even the corroboration of minor, innocent details" can be enough to support a finding of probable cause. *United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001) (quotations omitted). In addition, the informant here had a history of providing reliable information. Officer Ottney explained that "[t]his CRI has provided information to law enforcement in the past that has been found to be timely, accurate, and truthful" and that "[t]he information provided by this CRI has led to arrests and convictions in Minnesota State Court." (Hr'g Ex. 1.)

This Court concludes that the information that was provided in the affidavit, considering the totality of those facts together, including the information provided by a trusted CRI, established probable cause to believe that there was fair probability evidence

of the crime (illegal possession of firearms) would be found in the storage locker that Thomas rented.

Finally, even if probable cause did not exist, this was a facially valid warrant, and therefore the good-faith exception to the exclusionary rule, established in *United States v. Leon*, 468 U.S. 897 (1984), would have to be considered. "Under the good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (alteration in original) (quotations omitted). "When assessing the objective [reasonableness] of police officers executing a warrant, [the Court] must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *Id.* at 431 (alteration in original) (quotations omitted). Here, this Court concludes that the good-faith exception would apply to the search warrant for the storage locker. There is no evidence to suggest that the officers' reliance on the warrant was not in good faith, nor is there evidence that the officers' reliance was not reasonable. For these reasons, this Court concludes that the evidence seized as a result of the execution of the search warrant should not be suppressed and Defendant's motion should be denied.

## RECOMMENDATION

Based on the file, record, and proceedings herein, and for the reasons stated above,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Fruits of

Unlawful Search and Seizure (Doc. No. 28) be **DENIED**.

Date:  June 14, 2021                              *s/ Becky R. Thorson*
                                                  BECKY R. THORSON
                                                  United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b), any party may file and serve specific written objections to this Report and Recommendation by **June 28, 2021**. A party may respond to those objections by **July 12, 2021**. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 7 days from the date of its filing. If timely objections are filed, this Report will be considered under advisement from the earlier of: (1) 7 days after the objections are filed; or (2) from the date a timely response is filed.